*In the matter of the probate of the last Will and Testament of*
EDWARD FISHER, *deceased.*

CERTIORARI TO DANE CIRCUIT COURT.

A will, perfect in itself, and adequate to the disposition of the entire estate of the testator, to which the will relates, operates as a revocation of all former wills, without words of revocation, though this entire disposition of the estate is effected by the residuary clause, and not by definite legacies or sums. Smith, J., dissenting.

THIS proceeding arose out of certain proceedings in the County Court of Dane county in relation to the probate of the last will and testament of Edward Fisher, deceased, taken by appeal to the Circuit Court, and thence by certiorari to this court.

On the 26th day of August, 1852, William Fisher, by C. Abbott, his attorney, appeared before the county judge of said county, and presented for probate, as the last will and testament of Edward Fisher, deceased, the following testamentary paper:

" This is the last will and testament of me, Edward Fisher, of Nottingham, England, but now of Madison, Wisconsin, North America. Gentlemen: I will and bequeath unto my brothers, Isaac and William Fisher, and my brother-in-law, Thomas Longrigg, the sum of seven hundred pounds, part of my personal estate, upon trust to lay out and invest the same upon real or government security, and from time to time to call in and re-invest the same, or any part thereof, as occasion may require, or they in their discretion shall deem expedient, and pay or apply the annual interest, dividends and proceeds thereof, unto the maintenance and education of Mary Ann Dutton, the illegitimate child of Charlotte Dutton, Glass House street, Nottingham, until she attain the age of sixteen years; and upon the said Mary Ann Dutton attaining the age of sixteen years, I direct and will, that they, the said Isaac and William Fisher, and Thomas Longrigg, shall purchase for the said Mary Ann Dutton, a government annuity of six shillings a week, for life, the surplus of the seven hundred pounds, if any, remaining after the purchase of the paid annuity, I direct and will, shall form part of the residue

of my personal estate, and if the said Mary Ann Dutton, shall happen to die before she attain the age of sixteen years, I direct and will that the whole sum of seven hundred pounds shall form part of the residue of my personal estate.

"I give and bequeath unto the said Charlotte Dutton, Glass House street, Nottingham, a government annuity of five shillings a week for life; unto her illegitimate daughter Angelina Dutton, I give and bequeath a government annuity of six shillings a week for life, and unto her illegitimate son, James Dutton, I give and bequeath a government annuity of seven shillings a week for life. And if any of them, the said Charlotte, Angelina and James Dutton, shall happen to die, in my lifetime, I direct and will that the sum required for her or his annuity, so dying, shall form part of the residue of my personal estate.

"I give and bequeath unto my friend, John Briggs, of Long Row, Nottingham, England, the sum of fifty pounds, £50 and if the said John Briggs shall happen to die, in my lifetime, then I give and bequeath the said fifty pounds unto his child or children in equal shares, if more than one, and if but one, the whole sum to such one child.

"I give and bequeath unto my brothers, Thomas Fisher, John Fisher and James Fisher, and unto my sister Mary Hewitson, the sum of twenty-five pounds each, £100 and unto Ann, the daughter of my sister Jane Longrigg, £50 and unto Elizabeth, the daughter of my sister Deborah £50 Lowthion, and unto George, the son of the said Deborah £50 Lowthion, I give and bequeath the sum of fifty pounds ———— each, and if any of them shall happen to die, in my life- £300 time, I direct and will that share of him or her, the said Thomas, John and James Fisher, Mary Hewitson, Ann Longrigg, and Elizabeth and George Lowthion, so dying, shall form part of the residue of my personal estate.

All the rest, residue and remainder of my personal estate and effects whatsoever and wheresoever, whereof I have any power to dispose to after payment of all my just debts, funeral and testamentary expenses, I give and bequeath the same unto my two brothers, Isaac and William Fisher, and unto my two sisters, Elizabeth, the wife of Robert Leach, and Ann, the wife of the said Thomas Longrigg, to be divided equally amongst them,

and if any of them, the said Isaac and William Fisher, Elizabeth Leach and Ann Longrigg, shall happen to die in my lifetime, or before any of the contingent shares above mentioned to become payable, on the death of the said Charlotte, Angelina, Mary Ann and James Dutton, and the said Thomas, John and James Fisher, Mary Hewitson, Ann Longrigg and Elizabeth and George Lowthion, then I give and bequeath the share of my said brother or sister so dying, unto his or her child or children, in equal shares, if more than one, and if but one, the whole of such share to such one child. And if the said William Fisher, shall happen to die in my lifetime, without having child or children, then I give and bequeath his share unto the said Isaac Fisher, Elizabeth Leach, Ann Longrigg, to be divided equally amongst them.

I appoint the said Isaac Fisher, William Fisher and Thomas Longrigg, joint executors and trustees of this my will, and I will and direct that my said executors and trustees shall not be liable or accountable for more trust moneys than shall come to their respective hands by virtue of this my will, nor for any less than may happen thereto, so that such loss happen without his or their willful default, nor shall one of them be answerable for the other, or for the acts, deeds, receipts, or willful defaults of the other, but each only for his own acts, and receipts or willful defaults.

In testimony whereof, I have to this my will, set my hand this twenty-fifth day of March, one thousand eight hundred and fifty.

(<i>Signed</i>) EDWARD FISHER.

"Signed, published and delivered, by the said Edward Fisher, the testator as and for his last will and testament, in the presence of us, who in his presence at his request, and in the presence of each other, have subscribed our names as witnesses.

JNO. SYKES,<br>THOMAS SYKES."

On the 9th October, 1852, Messrs. Knapp & Frink, on behalf of John Burkley, guardian of James, Angelina and Mary Ann Dutton, came into the office of said county judge, and presented for probate a certain other instrument in writing, purporting

also to be the last will of the said Edward Fisher, deceased,. which instrument is as follows:

"This is the last will and testament of me, Edward Fisher, of Craglin, Low Hull, in the county of Cumberland, but now residing at Tevril, in the county of Westmoreland. Gentlemen; I give and bequeath unto my brother Isaac Fisher, my brother-in-law Thomas Longrigg, and my nephew Richard Leach, the sum of one thousand four hundred pounds, part of my personal estate, upon trust, to lay out and invest the same upon real or government security, and from time to time to call in and re-invest the said sum, or any part thereof, as occasion may require, as they in their discretion shall deem expedient, and pay and apply the annual interest, dividends and proceeds thereof unto Charlotte Dutton, of No. 35, Glass House street, Nottingham, for the maintenance of herself and the maintenance and education of my three illegitimate children by her, viz: James Dutton, Angelina Dutton and Mary Ann Dutton, until they shall respectively attain the age of thirty-one years, and upon the said James Dutton attaining the said age, to pay to him the sum of four hundred and sixty-six pounds thirteen shillings and four pence, being two-thirds of the sum of seven hundred pounds, one moiety of the said sum of one thousand four hundred pounds; and to pay to the said Angelina Dutton and Mary Ann Dutton, upon their severally attaining the said age, the sum of two hundred and thirty-three pounds six shillings and six pence, each; and to pay to the said Charlotte Dutton the annual interest and dividends of the sum of four hundred and sixty-six pounds thirteen shillings and four pence, being the remaining third part of the said sum of one thousand four hundred pounds after the respective payments above mentioned, for and during the term of her natural life, and on her death, upon further trust, and to pay to the said James Dutton, the further sum of two hundred and thirty-three pounds sixteen shillings and eight pence; and to the said Angelina Dutton, and Mary Ann Dutton, the sum of one hundred and sixteen pounds thirteen shillings and four pence each. And if the said Charlotte Dutton shall happen to die, before any of the said children shall attain the age of thirty-one years, then upon trust, that they, the said Isaac Fisher, Thomas Longrigg and Richard Leach, or the sur-

vivors or survivor of them, do pay and apply the annual interest and dividends of the said sum of one thousand four hundred pounds, or such part thereof, as shall be then remaining, for and towards the maintenance and education of the said James, Angelina and Mary Ann Dutton, until they shall respectively attain the said age, and if any of them shall die before attaining the said age having child or children, upon trust, to pay the share of him or her so dying, unto such child or children, in equal shares, if more than one, and if but one, the whole of such share to such one child. But if any of them shall die before attaining the said age without having any child or children, or being such, and they, he or she, shall die, before attaining the age of twenty-one years, I direct and will the share of him or her, the said James, Angelina and Mary Ann Dutton, so dying, shall form part of the residue of my personal estate.

"All the rest, residue and remainder of my personal estate and effects, whatsoever and wheresoever, whereof I have any power to dispose, after payment of all my just debts, funeral and testamentary expenses, I give and bequeath the same unto my brother, the said Isaac Fisher, and my two sisters, Elizabeth, the wife of Robert Leach, and Ann, the wife of the said Thomas Longrigg, to be divided equally amongst them; and if any of them shall happen to die, in my lifetime, or before any of the contingent shares above mentioned, to become payable on the death of any of my said three children, without having child or children, then I give and bequeath the share of my said brother or sister, so dying, unto his or her child or children, in equal shares, if more than one; and I appoint the said Isaac Fisher, Thomas Longrigg and Richard Leach, joint executors and trustees of this my will; and I will and direct that my said executors and trustees shall not be liable or accountable for more trust moneys than shall come to their respective hands by virtue of this my will, nor for any loss which may happen thereto so as such loss happen without his or their willful default, nor shall one of them be answerable for the other, or for the acts, deeds, receipts or willful defaults of the other, but each only for his own acts and receipts or willful defaults.

In testimony whereof, I have to this my will set my hand,

this eighteenth day of March, one thousand eight hundred and forty-four.

EDWARD FISHER.

Signed, published and declared by the said Edward Fisher the testator, as for his last Will and Testament, in the presence of us, who in his presence, and at his request, and in the presence of each other, have subscribed our names as witnesses.

JOS. ATKINSON.

EDWARD ARMSTRONG.

These two applications were consolidated; and were heard in the County Court at the same time, William Fisher resisting the probate of the first will. Under the direction of the county judge, testimony was taken to show the intention of the testator in re-- lation to the two testamentary papers offered for probate.

It appeared that the testator died in Madison, Dane county, the 27th day of July, 1852; that the testator was a native of England, and both wills were made there; that soon after making the first will, he came to this country and resided in Madison aforesaid. In 1850 he returned to England for a short time, and while there executed the last will, bearing date March 25, 1850. This was in his own handwriting; and at the time of making it he had the first in his possession, and used the same as a formula in the draught of the last; that immediately after executing the last instrument, he inclosed the first in an envelope, and directed it to himself at Madison, Dane county, Wisconsin, and folded the other as a letter, and also directed it to himself at the same place—and soon after returned to Madison aforesaid. On, his return to Madison, Wis., he took with him the children mentioned in the testamentary papers, viz: James, Angelina and Mary Ann Dutton, where they continued to live with him as his family in his own house, and were supported and cared for by him as his own children until his decease; and he had been frequently heard to say that he intended to give them all his property, and that none of his brothers or other relatives should have any portion of it. Between the dates of the two wills the testator had nearly doubled his property.

The testamentary paper of the date of March 18, 1844, was found, after the death of the testator, in his safe inclosed in the

broken envelope, among his title-deeds, &c., and the one of March 25th, 1850, was found in a pigeon-hole in his desk among other papers, the desk and safe both being in the house where he died.

The county judge admitted the testamentary paper of the date of March 25, 1850, to probate, rejecting the paper of the date of March 18, 1844, and directed letters testamentary to issue.

From these orders the guardian of the infant children claiming under the first will, appealed to the Circuit Court.

This appeal was heard at the October term, 1853, when the following order was made:

"That the order of N. B. Eddy, county judge of the County Court in and for said county of Dane, so far as the same decides that the testamentary paper bearing date on the 25th day of March, A. D. 1850, is a revocation of all former wills executed by the said Edward Fisher, be, and the said order of the said county judge is hereby reversed and held for naught.

"And it is further ordered and decreed by this court, that the said testamentary papers, the one bearing date on the 18th day of March, A. D. 1844, and witnessed by Joseph Atkinson and Edward Armstrong, and the other bearing date on the 25th day of March, A. D. 1850, and recorded as and for the last will and testament of said Edward Fisher, deceased.

"And it is further ordered and decreed by this court, that the pecuniary legacies named in the said testamentary paper, bearing date on the 25th day of March, A. D. 1850, be paid to Mary Ann, James and Angelina, the children of Charlotte Dutton; also, to the said Charlotte Dutton, John Briggs, Thomas Fisher, John Fisher, James Fisher, Mary Hewitson, Ann Longrigg, Elizabeth Lowthion and George Lowthion, the legatees named in said testamentary paper, before any other legacies are paid.

"And it is further ordered and decreed, that the special legacies named in the testamentary paper dated on the 18th day of March, A. D. 1844, and given for the maintenance and education of her said children by the said Edward Fisher begotten, Angelina, James and Mary Ann, be paid out of the personal estate of the said Edward Fisher, before the residuary legacies named in the said testamentary paper dated on the 25th day of March, A. D. 1850, are paid.

"And it is further ordered and decreed by the court, that the

testamentary paper dated the 25th day of March, A. D. 1850, is a revocation of so much of the testamentary paper, dated on the 18th day of March, A. D. 1844, as relates to the residuary legacies, mentioned in the said last-mentioned testamentary paper, and no further, and that the residuary legacies named in said testamentary paper, dated March 25th, A. D. 1850, be paid to said residuary legatees after the pecuniary legacies aforesaid are fully paid, and not before."

The case was brought to this court by special writ of certiorari, and was heard at the June term, 1854, when the decree of the Circuit Court was affirmed, Mr. Justice Smith delivering the opinion of the court. The case was, on motion, reheard at June term, 1855, and again re-argued at the December term, when the former decision of this court, affirming the decree of the Circuit Court, was reversed, and that of the County Court affirmed.

It was contended on the part of the executor, William Fisher, that the last will being complete in itself, and adequate to the disposition of the entire estate, was a revocation of all former wills, although it contained no words of revocation.

On the other hand, it was insisted the two testamentary papers, together constituted but one will; that the last revoked the first, only in so far as the one was inconsistent with the other, viz: the residuary clause: and that the legacies named in the last were not substitutional for, but cumulative to those named in the first.

*Knowlton, Knapp & Frink*, for the guardian of the minor children.

*Abbott and Clark*, for the executor.

*By the Court*, COLE, J. Edward Fisher deceased July 27th, 1852, leaving among his papers two testamentary instruments, bearing date March 18th, 1844, and March 25th, 1850. By the first, he gave Isaac Fisher, Thomas Longrigg and Richard Leach, the sum of £1,400, part of his personal estate in trust, to be invested in real or government securities, and apply the interest and proceeds for the maintenance of Charlotte Dutton, and for

the maintenance and education of his three illegitimate children by her, viz: James, Angelina and Mary Ann Dutton, until they shall respectively attain the age of thirty-one years; and upon James attaining the said age, said trustees to pay him the sum of four hundred and sixty-six pounds, thirteen shillings and four pence, being one-third of the said sum of £1,400; Angelina and Mary Ann, upon attaining the age of thirty-one, to be paid each two hundred and thirty-three pounds, six shillings and six pence, another third of the said £1,400; and the interest and dividends of the remaining third of the £1,400 was to be paid Charlotte Dutton during her life, and upon her decease, one-half thereof was to be paid James, and the other moiety to be divided equally between Angelina and Mary Ann, if they are thirty-one, and if they are not thirty-one, then the interest thereof to be applied to their maintenance until they arrived at the age of thirty-one. If any of them should die before arriving at the age of thirty-one, leaving child or children, then the share of him or her so dying, to be paid to said child or children left, equally; but if any of them should die before attaining said age, without having any child or children, or being such, and they, he or she shall die before attaining the age of twenty-one, then the share of him or her, the said James, Angelina and Mary Ann Dutton, so dying, to form part of the residue of his personal estate. The residue of the personal estate, after paying debts, funeral and testamentary expenses, was given to Isaac Fisher, Elizabeth Leach and Ann Longrigg, equally, and to their children, in case either of them should die in the lifetime of the testator. Isaac Fisher, Thomas Longrigg and Richard Leach, were appointed joint executors and trustees of the will.

By the testamentary paper of March 25th, 1850, purporting to be the last will and testament of Edward Fisher, he gave unto his brothers, Isaac and William Fisher, and his brother-in-law, Thomas Longrigg, the sum of seven hundred pounds, part of his personal estate upon trust, to lay out and invest the same upon real or government security, and to pay or apply the annual interest and proceeds unto the maintenance and education of Mary Ann Dutton, the illegitimate child of Charlotte Dutton, until she was sixteen years of age, at which time the said trustees were to purchase with said sum of £700, for the said Mary

Ann Dutton, a government annuity of six shillings a week for life, and the remainder of the said sum, after purchasing said annuity, to form part of the residue of the personal estate; and in the event that Mary Ann should die before attaining the age of sixteen, then the whole sum to form part of the residue of the personal estate. He then gave Charlotte Dutton a government annuity of five shillings a week for life; Angelina a government annuity of six shillings a week for life; James Dutton a government annuity of seven shillings a week for life; and if any of them should die in the testator's lifetime, the sum required to purchase the annuity was to form part of the residue of his personal estate. He also gave John Briggs and his children £50, Thomas Fisher, John Fisher, James Fisher and Mary Hewitson, £25 each; Ann Longrigg, Elizabeth Lowthion and and George Lowthion, £50 each, if they survived the testator; and if not, the legacy of him or her so dying, was to form part of the personal estate. Then follows this clause in the will:

"All the rest, residue and remainder of my personal estate and effects, whatsoever and wheresoever, whereof I have any power to dispose, after payment of all my just debts, funeral and testamentary expenses, I give and bequeath the same unto my two brothers, Isaac and William Fisher, and unto my two sisters, Elizabeth, the wife of Robert Leach, and Ann, the wife of the said Thomas Longrigg, to be divided equally amongst them; and if any of them, the said Isaac and William Fisher, Elizabeth Leach and Ann Longrigg, shall happen to die in my lifetime, or before any of the contingent shares above mentioned, to become payable on the death of the said Charlotte, Angelina, Mary Ann and James Dutton, and the said Thomas, John and James Fisher, Mary Hewitson, Ann Longrigg, and Elizabeth and George Lowthion, then I give and bequeath the share of my said brother or sister so dying, unto his or her child or children, in equal shares, if more than one, and if but one, the whole of such share to such one child. And if the said William Fisher shall happen to die in my lifetime without leaving child or children, then I give and bequeath his share unto the said Isaac Fisher, Elizabeth Leach, Ann Longrigg, to be divided equally amongst them." Then follows a clause appoint-

ing Isaac Fisher, William Fisher and Thomas Longrigg, joint executors and trustees of the will.

The latter will was presented to the county judge for probate on behalf of the executor, William Fisher; and the former was also presented for probate on behalf of the guardian of James, Angelina and Mary Ann Dutton. Both applications were consolidated and testimony taken to prove the execution of both wills. The judge of probate decided that Edward Fisher legally executed, published and declared each of said instruments, at their respective dates, as and for his last will and testament, and that he was in all respects competent to make said wills when they were executed. He also held that the instrument bearing date March 25th, 1850, was a revocation of the instrument bearing date March 18th, 1844, and that the former was a valid will, and it was admitted to probate as the last will and testament of Edward Fisher. From this decision the guardian entered an appeal to the Circuit Court, and that court decided that the two instruments should be admitted to probate, as constituting so far as the legacies in them contained, one will, and that the instrument of March 25th, 1850, revoked only so much of the testamentary paper dated March 18th, 1844, as relates to the residuary legacies mentioned in the last-mentioned instrument. To reverse the decree of the Circuit Court the cause is brought here by a writ of certiorari, and the first and only question in the case is as to the correctness of the decree of the Circuit Court.

I am of the opinion that the decision of the Probate Court was correct in admitting to probate the instrument of March 25th, 1850, as the last will and testament of Edward Fisher, to the exclusion of the one dated March 18th, 1844. Both of these papers, it will be observed, appear to be perfect and complete wills, properly executed and duly attested. They both likewise relate exclusively, to personal estate, and by specific legacies and residuary clauses, each is entirely adequate to the disposition of all the personal property belonging to the decedent. It is very true that there are no words in the latter will expressly revoking the former, yet I think from the nature of the instrument itself, that it must necessarily operate as a revocation of it. To my mind it is very apparent that a man cannot have two independent wills of personal estate, at the same time, each acting upon

the same subject matter, and each professing to make a distinct and full disposition of such subject matter; although he may leave several papers, positively disposing of his property, neither of which in itself, *is*, or purports to be, a complete will. *Stone vs. Evans*, 2 *Atk.* 87; *Beauchamp vs. Earl of Hardwick*, 5 *Ves. jr.* 280; *Bac. Abr. title Wills* " *D.;* " 1 *Jarmin on Wills, marg. p.* 160; *Sandford vs. Vaughan*, 1 *Phill.* 128; *Harley vs. Bagshon*, 2 *id.* 48.

Could I consider the instrument of March 18th, 1844, and of March 25th, 1850, as really constituting one will, I should have no difficulty in affirming the decree of the Circuit Court. But I cannot so regard them. Each instrument appears to me to be a distinct substantive will of itself, and not one in the nature of a supplement or codicil to the other.

The latter in time is competent to make, and does in fact make a different and full disposition of the testator's property. I think it must revoke the former and is the will of the deceased.

Such I understand to be the rule of law. *Bac. Abr. Wills* " *D.*" In 1 *Jarmin on Wills, marg. p.* 159, it is stated that " where a testator at different periods of his life has made various tes-tamentary papers, some of which he destroys, and others he leaves undestroyed, each purporting to contain his last will, this character belongs exclusively to such one of the uncanceled papers as was executed most proximately to his decease."

And in *Rolle Abr. p.* 615, under the head of what may be a revocation, it is said that a will perfect in its nature, and properly executed, but incapable of operating on account of some inca-pacity in the devisee to take, nevertheless operates as a revoca-tion of a former will, because all the requisitions of the statute are complied with, and it is inoperative on account of some ex-trinsic circumstances. See also *Goodright vs. Harwood*, 3 *Wils.* 497; *S. C., Comp.* 87 ; *Goodright vs. Glazier*, 4 *Burr.* 2512; 2 *Greenlf. Ev. sec.* 681.

In *Comyns R.* 451 (*Limbery vs. Moore et al.*), it was held that if there be an intention to revoke by a new will, and the instru-ment made for that purpose could not take effect on account of some defect in the execution, it could not revoke the old will until the new one should be complete. And it is said that this was agreeable to the rules of the civil law, as well as the resolu-

tions of the common law, since the statute of frauds. In the civil law the rule is laid down in the following language: *tunc prius testamentum sumpitus cum posterios perfectum est. Dig. Lib.* 28, *tit.* 3, *p.* 2; *Laughton vs. Atkins,* 1 *Pick.* 535.

Moreover it is contended, that these wills are inconsistent with each other only so far as the residuary clauses are concerned, and that the second will cannot, and does not operate as a revocation of the former will in respect to the legacies given to Charlotte Dutton and her three illegitimate children. This appears to be the view taken of the case by the Circuit Court, and it is insisted that that view is correct upon principle and authority. I have carefully examined all the cases within my reach cited by the counsel in support of this position, and am unable to find an authority in point. The case of *Lyon vs. Fisk et al.* (1 *Lous. An. R.* 444), was made under article 1686 of the Civil Code adopted in that state.

That article is as fellows;

"Posterior testaments which do not in an express manner revoke the prior ones, annul in the latter only such of the dispositions there contained as are incompatible with the new ones, or contrary to them, or entirely different." That article was decisive upon the point before the court, and was so adjudged.

Again it is insisted that these two wills in respect to the legacies before mentioned, fall within the principle of *Hooley vs. Hatton* (1 *Bro. C. C.* 390). I think, however, that the reasoning upon which that argument proceeds is more specious than solid. It goes upon the idea that the will of 1850, is in some manner connected with that of 1844, that the former is supplemental to to the latter, instead of being, as I think it clearly is, an independent will, making quite a different disposition of all the testator's personal property. The doctrine in *Hooley vs. Hatton,* as I understand it, is that a repetition of legacies *simpliciter* in different testamentary instruments, *which taken together, constitute one will,* of equal, greater or less sums, shall be taken as cumulative and not substitutional. But does that rule apply to distinct substantive wills, which do, in fact, supplant, and which seem intended to supplant each other?

Some suggestions were made by the counsel who argued the case for the guardian of the children of Charlotte Dutton, that a

In re Edward Fisher.

construction given to these wills which would permit them both to stand, so far as the legacies given to those unfortunate illegitimate children were concerned, would subserve the cause of substantial justice and humanity ; but it could not have been expected, and probably was not expected, that we should depart from the well settled rules of law applicable to cases of this kind. Those children certainly had strong claims upon the bounty and affection of the testator, but still had he seen proper to have given all his property to strangers, we could not have interfered with such a testamentary disposition of his estate.

I think, therefore, that the decree of the Circuit Court must be reversed, and that the decision of the Probate Court, in admitting to probate the last will to the exclusion of the first, was correct, and must be affirmed.

SMITH, J., dissenting.