# Charleston.

JONATHAN B. FORNEY *et al.* vs. JOSEPH W. FERRELL *et al.*

January Term, 1871.

1. Undue influence to avoid a will must be such as to overcome the free agency of the testator at the time the instrument was made.

2. If undue influence be proved to have been exercised over the testator, both before and after the execution of the will, the facts may be given in evidence to the jury, from which they may infer, if they see proper, that undue influence was exercised over the testator at the time the will was made.

3. It is proper to admit to go in evidence to the jury, a conversation in the presence of the testator, and other conversations of the testator, as to what he would do at the time of his decease, with the property devised by him.

4. The declarations, admissions, and conversations of one devisee, cannot be admitted in evidence against his co-devisees.

5. On the trial of an issue *devisavit vel non*, after evidence has been offered tending to prove the due execution of the paper writing purporting to be the will of the deceased, it is competent for the defendants, for the purpose of proving that the execution of the paper writing purporting to be the will of the decedent had been procured by undue influence, to offer in evidence conversations between the husband and the testatrix, while she was living, tending to show undue influence, exercised by a devisee under the will in its procurement.

6. It is proper on a like issue, for the defendants, with a view to show that the alleged will was not the will of the testatrix, to offer in evidence conversations between the testatrix and her husband, after its execution and during coverture, tending to show that she did not know or recollect, accurately, the contents of the alleged will.

7. It is improper to ask a female witness, with a view to impeach her, if she had not married her last husband, (she having stated that she had been twice married and that her last husband was dead), before the death of her first husband.

8. The plaintiffs in an issue *devisavit vel non*, simply offer evidence necessary to admit the will to probate, and rest. The defendants then offer evidence of the want of testamentary capacity, and that the will was procured by undue influence. The plaintiffs, in rebutting, propose to offer further evidence ¡of testamentary capacity, and *to* rebut the evidence of undue influence offered by the defendants, by the draughtsman of the will. HELD:

> No valid objection could be urged against its admissibility to rebut the evidence of the defendants, tending to show undue influence and want of testamentary capacity.

9. It is not improper that the inquiry be made of a witness and an answer insisted on, if deemed important in the case, whether the witness had had any private conversation with the counsel of the party calling him, in relation to his testimony in the cause, prior to being sworn. Courtesy among counsel may tend to discountenance the practice, and the court will take care that the practice is not abused.

10 It is competent for the propounders of a will to prove the issue on their part by any other legal evidence, as well as by the record or certified copy thereof of the probate of the paper propounded as the will, and it is error in the court below to instruct the jury that it is incumbent and necessary for the propounders of the will to offer in evidence, and show to the jury the record or certified copy thereof of the probate of the paper writing propounded by them, as and for the last will of the decedent.

11. After the evidence is closed on both sides, and the questions arising in the case have been argued to the jury by one of the counsel for the plaintiffs, and by the counsel for the defendants, the counsel for the plaintiffs who made the concluding argument, proposed to read to the jury a paper mentioned in a bill in equity, filed by the defendants in the suit at bar, against the plaintiffs therein, in a suit in chancery, in which the issue in the suit at bar was ordered. HELD:

> That the evidence was proper, and the only objection to it was the time of offering it, and on that ground it might have been excluded, had not the erroneous instruction of the court as to its necessity, made it necessary to offer it.

12. If a testator makes a disposition of his estates which he did not desire and did not intend, and such disposition was made by reason of the undue influence exerted upon him, and operating at the time of making the same, it is such undue influence as will avoid the will, notwithstanding the testator was not controlled by any act of force, coercion or persuasion put forth at the time of signing the paper; for the freedom of the will is effectually overcome, and the act obviously more the offspring of another's will, than of the testator.

13. The defendants to an issue *devisavit vel non*, ask the court to instruct the jury that, if they believe from the evidence that the testatrix made and acknowledged in writing duly executed as the law requires, a will or codicil to the paper writing propounded by the plaintiffs in the issue, as and for the last will of the testatrix, at any time after the date of the paper writing so propounded, and inconsistent with, or in conflict with it, then the jury should find the said paper writing propounded by the plaintiffs, is not the last will and testament of the testatrix. HELD:

There is no error in the instruction taken as an independent or abstract proposition, but as applicable to the peculiar issue and the circumstances of the case, it is calculated to mislead the jury and induce a response in the verdict to but half the issue submitted for inquiry, and was therefore objectionable.

14. It is not error for a court below to instruct the jury that, if they believe from the evidence that a testatrix understood or believed that the paper writing, made as and for her last will and testament, contained a provision for the use or benefit of her husband, or his children, or for both said husband and children, and said provision is not contained in said paper writing, it is their duty to consider and weigh such evidence in ascertaining whether such paper writing is or is not the last will and testament of the said testatrix.

15. A jury is empannelled and sworn to determine whether any, and if any how much, of the papers in the bill mentioned, dated respectively December 27th, 1861, and March 7th, 1866, be the will of the said M. F., deceased. The verdict rendered, is: "We the jury find that the paper writing offered in evidence in this cause, purporting to be the will of M. F., deceased, and dated December 27th, 1861, is not, nor is any part thereof, the last will of the said M. F., deceased." HELD:

That the verdict is objectionable, because it is not responsive to the issue.

Jonathan Buchanan, of Brooke county, who died in 1857, had two children, both daughters, viz: Rebecca Buchanan, who married Daniel S. Forney, the elder, in 1828, and died in 1851; and Mary Buchanan, who married the same Daniel S. Forney, the elder, in 1852, and died in 1866. Of the first marriage there were living in 1861, and are yet living, five children, to wit: the appellant, John B. Forney, the elder, and the appellees Sarah, wife of Joseph W. Ferrel, Daniel S. Forney, the younger, Nancy Forney, and Mary I., wife of David L. Kelly. Of the second mar-

riage there were no children.   By his will, dated March
15th, 1853, and admitted to probate in the circuit court of
Brooke county at the fall term 1857, Jonathan Buchanan
gave the residue of his estate, real and personal, after pay-
ment of his debts and funeral expenses, to his executor, in
trust for the separate use of his surviving daughter Mary,
(who was then the wife of Daniel S. Forney, the elder,) "so
that the same might not be subject to the power, control,
debts, or engagements of her husband," and directed her
executor, at the death of the daughter, to deliver and convey
said estate, or so much thereof as should then remain, to
such persons as his daughter should direct and appoint either
by deed or will.   The appellant, Robert Buchanan, was the
executor of this will.   Pursuant to the power thus granted,
Mary Forney made the will in controversy dated December
27th, 1861, and afterwards a codicil thereto, dated March
7th, 1866, both of which were proven by the subscribing
witnesses and admitted to probate in the recorder's office of
Brooke county, December 10th, 1866.   By the will, Mary
Forney devised to her nephew, Jonathan B. Forney, the
elder, for the term of his life, all the real estate devised to
her by her father, being two tracts of land in Brooke county
containing about 180 and 160 acres respectively, and gave
the 180 acres and 30 acres of the 160 acre tract, to Jonathan
B. Forney, the younger, after the death of his father, and
the residue of the 160 acre tract to Emma Mary Forney,
after the death of her father.   By the codicil, she bequethed
1,000 dollars to the appellee, Nancy Forney, charging the
payment thereof on the 180 acre tract.   Neither by the
will nor codicil was any disposition made of the personal
estate bequeathed to her separate use by the will of her
father.   In 1867, in the circuit court of Brooke county, the
appellees filed their bill in equity to impeach this will of
Mary Forney as well as the codicil thereto, making the
appellants defendants, and filed as exhibits the will and
probate thereof of Jonathan Buchanan, and also the will
and codicil and probate thereof of Mary Forney.

The will of Mary Forney was impeached on the ground that, at the time of signing the writing purporting to be her last will and testament, and the codicil thereto, she was not of sound mind and memory, and that the same were procured by the undue influence of the said Jonathan B. Forney and other interested persons, and that in truth and in fact the said writings were not the last will and codicil of the said Mary Forney, deceased. The bill was answered by Jonathan B. Forney, the elder, and the infant defendants by their guardian *ad litem*. The answers put in issue the material allegations of the bill, and deny the undue influence imputed.

The circuit court, at its September Term, 1867, ordered a jury to be empanneled at the bar of the court, on the law side thereof, to determine, by their verdict, whether any, and if any, how much of the papers in the bill mentioned, dated respectively December 27th, 1861, and March 7th, 1866, was the will of the decedent, Mary Forney, on the trial of which issue Jonathan B. Forney, the elder, and the infant defendants, Jonathan B. Forney, the younger, and Emma Mary Forney should be plaintiffs, and the complainants in said bill should be defendants. At the November term, 1867, the defendant Jonathan B. Forney, the elder, moved the court to set aside the aforesaid order, on the ground that the issue thereby directed, so far as it related to the supposed codicil, was inconsistent with the pleadings and admissions in the cause, and assigned to the defendants the affirmative on the question of the validity of the supposed codicil, and to enter in lieu thereof an order, whereby, after reciting among other things, that it appearing to the court to be the interest of the infant defendants that the supposed codicil should be declared of no effect or validity, and no party to the cause maintaining the validity of the supposed codicil, it should be decreed that it be set aside and declared of no validity, and that a jury be empanelled to determine by their verdict whether the writing, dated 27th of December, 1861, was the will of the said Mary

Forney, deceased, on the trial of which issue the defendants should be plaintiffs, and the complainants in the bill defendants. This motion was overruled by the court. At the November term, 1868, a jury was empanelled under the order made at the September term, 1867. The jury having heard the evidence, arguments of counsel, and the instructions given them by the court, found by their verdict that the paper writing of the 27th of December, 1861, is not, nor is any part thereof, the last will of said Mary Forney, deceased.

On the trial of the issue the appellants filed twenty bills of exceptions to the ruling of the court; only such of the exceptions as do not appear in the opinion of the judge who delivered the opinion of the court need be given here. Exceptions Nos. 1, 2, 3, 4 and 5, appear in the opinion of the judge. The sixth exception is, that "on the trial of this issue the plaintiff in the issue gave in evidence to the jury the last will and testament of Jonathan Buchanan, deceased, bearing date the 15th day of March, 1853, and the certificate of the probate thereof in the circuit court of Brooke county at the fall term, 1857, and also gave evidence by Lewis Applegate and James Palmer, attesting witnesses thereto, tending to prove the due execution by Mary Forney, wife of Daniel S. Forney, of the paper writing purporting to be the will of the said Mary Forney, under the powers conferred by the before mentioned will of Jonathan Buchanan, deceased; and the defendants in said issue, for the purpose of proving that the execution of the said paper writing purporting to be the will of the said Mary Forney had been procured by undue influence, offered in evidence by a witness, the said Daniel S. Forney, husband of the said Mary Forney, conversations between said witness and his said wife, while she was his wife, tending to show undue influence exercised by Jonathan B. Forney in the procurement of the said last mentioned paper writing, to which evidence the plaintiff in the said issue then and there objected, and the court overruled the said objection and permitted the evidence to go to the jury."

Exception No. 7 was, "that the defendants offered to prove a fight which took place in 1862, between J. B. Forney and his grandfather, Jonathan Buchanan, at which Mary took the part of, and sympathized with, J. B. Forney. To which the plaintiffs excepted, on the ground that it was irrelevant, too remote in date, and only intended to excite the feelings of the jury against J. B. Forney; but the court overruled said objections and allowed the evidence to go to the jury."

Exception No. 8 was, "that the defendants, with a view to show that the alleged will was not, in fact, the will of Mary B. Forney, offered to prove by her conversations with her husband after its execution, and during coverture, that she did not know or recollect accurately the contents of the will. To which testimony the plaintiffs objected as incompetent and improper; but the court overruled the objection, and allowed the conversation of husband and wife, testified to by the husband, to go to the jury."

Exception No. 9 was, "that the defendants having introduced the evidence of D. S. Forney, tending to prove that J. B. Forney had acquired more than his share of his grandfather's estate, the plaintiffs, with a view to impeach his testimony, offered in evidence sundry notes, receipts, and bonds from Daniel S. Forney to his father-in-law, J. Buchanan, tending to prove that D. S. Forney had received large advances by his first marriage. But the court refused to let the evidence go to the jury, and excluded the same."

Exception No. 10 was, "that the defendants, for the purpose of maintaining the issue on their part, called as a witness Margaret Mead, and examined her in chief for the purpose of showing that the paper writing, purporting to be the will of Mary Forney, was procured by the undue influence of Jonathan B. Forney over the supposed testatrix; whereupon the plaintiffs, on cross-examination, for the purpose of discrediting the witness, asked if she was, or had been, a married woman; to which she answered that she had been married and that her husband was dead. The

plaintiffs then asked her if she had been married previous to her marriage with her deceased husband, Mead; to which she answered that she had been married to a man named Clarke. The plaintiffs thereupon, for the purpose of impeaching the witness, asked her if she had not married Meade, her last husband, before the death of her first husband, Clarke; to which question the defendants objected, and the court sustained the objections, and held such questions incompetent. The plaintiffs further asked the witness if she had not abandoned her first husband and her children and eloped with Meade; to which question the defendants objected, and the court sustained the objection and held said question incompetent. The plaintiffs asked the witness further questions for the purpose of showing that the witness was a woman of lewd and abandoned character; to all of which the defendants objected, and the court sustained their objection, and held such questions incompetent."

Exception No. 11 was, "that after the plaintiffs had closed their evidence in chief, stated in bill of exceptions No. —, and the defendants had given certain evidence, tending to prove undue influence and coercion, as in the bill of exceptions stated, the defendants in the issue gave in evidence, by a witness (Thomas Buchanan), that Mary Forney was more than an ordinary woman, very determined, and was not afraid of Jonathan B. Forney, or any one else, and had considerable attachment for Jonathan, and that she was in her right mind when the witness talked to her, and the plaintiff, in the issue, in the cross-examination of the witness, proposed to ask him the following question: 'Do you think that Mrs. Mary Forney could be prevented from making a will by any one, if she had determined to make one?' To which question the defendants in the issue objected, and the court sustained the objection, and refused to permit the question to be put."

Exception No. 16 was, "the plaintiffs and defendants in the issue having respectively given evidence, as set forth in the bill of exceptions numbered 14, and the question arising

thereon having been argued by the counsel of the parties respectively, the defendants thereupon moved the court to give the following instructions, to wit: 'To constitute undue influence and make void, by reason thereof, a paper writing executed as a will, it is not necessary that the party making such paper writing should be controlled by any force, coercion, or persuasion exercised at the time of the signing of said paper; it is all sufficient to avoid the paper if, upon the evidence, the jury find, by reason thereof, that the disposition of the estate by the writing is not the disposition which the party desired and intended to make of the same.' To which motion the plaintiffs in the issue objected; but the court overruled their objections and gave the instructions to the jury."

Exception No. 17 was, "the plaintiffs and defendants in the issue having respectively given evidence as set forth in the preceding bill of instructions, and the questions arising thereon having been argued by the counsel of the parties respectively, the defendants thereupon moved the court to give the following instructions to the jury, to wit: 'If the jury believe from the evidence, that Mary Forney made and acknowledged in writing duly executed as the law requires, a will or codicil to the paper writing propounded by the plaintiffs in this issue, as and for the last will of Mary Forney, at any time after the 27th day of December, 1861, the date of the paper writing in issue, and inconsistent with or in conflict with the paper writing in issue, then the jury should find the paper writing, propounded by the plaintiffs as aforesaid, is not the last will and testament of Mary Forney.' To which motion the plaintiffs in the issue objected; but the court overruled their objection and gave the instruction to the jury."

Exception No. 18 was, "the plaintiffs and defendants in the issue having respectively given evidence, as set forth in the preceding bills of instructions, and the questions arising thereon having been argued by the counsel of the parties respectively, the defendants thereupon moved the court to

give the following instructions to the jury, to wit: 'And if the jury believe from the evidence that the testatrix, Mary Forney, understood or believed that the paper writing contained a provision for the use or benefit of her husband, D. S. Forney, or his children, or both the husband and the children, and such provision is not contained in said paper writing, it is their duty to consider and weigh such evidence in ascertaining whether the paper writing is, or is not, the last will of Mary Forney.' To which the plaintiffs in the issue objected; but the court overruled their objections and gave the instruction to the jury."

*Lamb & Paul,* and *Stanton & Allison* for the plaintiffs in error.

*Daniel Peck* for defendants in error.

MAXWELL, J.  A bill was filed in the circuit court of Brooke county, under the statute, to contest the validity of the will of Mary Forney, deceased, who was a married woman.

The court made an order that a jury should be empanelled at the bar of the said court, on the law side thereof, to ascertain and determine by their verdict the issue, whether any, and if any, how much of the papers in the bill mentioned, dated respectively December 27th, 1861, and March 7th, 1866, be the will of the decedent Mary Forney.

A trial was accordingly had before a jury, during which numerous rulings of the court were made and excepted to, and about twenty bills of exceptions signed.

The 1st, 2d and 3d bills of exceptions are to opinions of the court admitting testimony of acts of the devisee J. B. Forney, tending to show undue influence exercised by him over the testatrix.  What the acts were, does not appear from the bills of exceptions, but it appears that the acts referred to in the first bill occurred in the year 1848; those in the second, in 1852, and those in the third, in the year

1866, while the will was executed in 1861, if executed at all. It is insisted that these acts were too remote from the time of the execution of the will to show undue influence over the testatrix at the time of its execution.

Undue influence to avoid a will must be such as to overcome the free agency of the testator at the time the instrument was made. If undue influence be proved to have been exercised over the testatrix, both before and after the execution of the will, I cannot see why the facts should not be given in evidence to the jury, from which they might infer, if they should see proper, that undue influence was exercised over her at the time the will was made.

The fourth bill of exceptions is to the opinion of the court admitting to go in evidence to the jury a conversation in the presence of the said testatrix, and another conversation of the said testatrix as to what she would do at the time of her decease, with the property devised by her. I am unable to see any objection to this ruling.

The fifth bill of exceptions is to the opinion of the court allowing evidence of the oral declarations, admissions and conversations of the devisee, J. B. Forney, to go in evidence to the jury to prove undue influence by him over the testatrix. There are two other devisees, who were infants at the time of the trial. It is claimed that the declarations and admissions of the said J. B. Forney cannot be admitted in evidence against his co-devisees. There is much conflict of authority on this question, but the weight of authority seems to be that the declarations, admissions and conversations of one devisee, cannot be admitted in evidence against his co-devisees. *Shailer* v. *Bumstead*, 99 Mass., 112; *Clark* v. *Morrison*, 25 Penn. State Rep., 453; *Titlow* v. *Titlow*, 54 Penn. State, 222; *Osgood* v. *Manhattan Co.*, 3 Cowen, 612; *Daw* v. *Brown*, 4 Cowen, 492; *Hanberger* v. *Peat*, 6 W. & S., 431; *Thompson* v. *Thompson*, 13 O. State, 358; *Blakey* v. *Blakey*, 33 Ala., 616; *Rogers* v. *Rogers*, 2 B. Monroe, 324; *Beall* v. *Cunningham*, 1 B. M., 399; *Brown* v. *Moore*, 6 Yerger, 272.

I am unable to see any error in the sixth, seventh, eighth

and ninth bills of exceptions. The exceptions to the opinion of the court taken in the tenth bill of exceptions, refusing to allow certain questions to be asked a female witness, are not well founded.

The doctrine on this subject was fully considered in *Howell's case*, 5 Grattan, 664, and settled as ruled by the court in this case.

Judge Berkshire concurred.

*I think the court did not err in its ruling in the eleventh exception.

The twelfth exception presents a question of practical importance. It will be seen from this bill of exceptions, that the plaintiffs in this issue simply offered the evidence necessary to admit the will to probate, and rested. The defendants in the issue then offered their evidence of the want of testamentary capacity, and that the will was procured by undue influence. The plaintiffs in the issue, in rebutting, proposed to offer further evidence of testamentary capacity, and to rebut the evidence of undue influence offered by the defendants, which the court refused to permit them to do.

It will be seen from the deposition of Mr. Ritchie, which is made a part of the bill of exceptions, that it is important evidence in the cause. He was the draughtsman of the will. The only question is, whether it should have been offered in chief, or whether it was competent as rebutting evidence. And it would seem that no solid objection could be urged against its admissibility to rebut the evidence of the defendants in the issue, tending to show undue influence and want of testamentary capacity in the testatrix. There was error, therefore, in excluding it.

Exception thirteen raises the question, whether it is competent, in cross-examination, to inquire if the witness had

---

*[The remainder of this opinion was prepared by Judge Brown, when a member of this court, and is now adopted and substantially concurred in by Judges Berkshire and Maxwell.]

had any private conversation with the counsel of the party calling him, in relation to his testimony in the cause, prior to being sworn. Courtesy among counsel may tend to discountenance the practice, and the court would doubtless take care that the practice be not abused. Yet, no legal ground is perceived why the inquiry may not be made, and the answer insisted on, if deemed important in the case.

Exception fourteen, is to the charge of the court that, in addition to the proof of execution of the will by the subscribing witnesses, to the jury, the propounders of the will must also offer in evidence the record of the probate of the will from the recorder's office, or from the records of the probate court where it was recorded.

The question whether the will had been admitted to probate or not, was no part of the issue before the jury. That was a question for the chancellor upon the pleadings and proofs. The jury was sworn to try whether the paper writings specified in the order directing the issue, purporting to be the last will of Mary Forney, were her true last will and testament, and not whether the same had been admitted to record in the probate court. It was competent, therefore, to prove the issue on the part of the plaintiffs in that issue, by any other legal evidence, as well as by the record or certified copy thereof of the probate of the paper propounded as the will. The court erred, therefore, in the ruling set forth in said exception fourteen, requiring such record or copy thereof.

Exception fifteen, is to the refusal of the court to permit the copy of the will and probate filed as an exhibit with the bill, to be read as evidence to the jury by the propounders of the will, after the court had instructed the jury that such evidence was necessary for the propounders. The evidence was proper enough, and the only objection would seem to be to the time of offering it. And on that ground it might have been excluded, had not the erroneous instruction of the court, as to its necessity, made it necessary to offer it.

Judge Redfield, after reviewing the authorities, sums up

the law of undue influence as follows: It must be such as: "1. To destroy the freedom of the testator's will, and then make his act obviously more the offspring of the will of others than of his own.   2. That it must be an influence specially directed towards the object of procuring a will in favor of particular parties.   3. If any degree of free agency or capacity remained with the testator, so that when left to himself he was capable of making a valid will, then the influence so controlling him, as to render his will of no effect, must be such as was intended to mislead him to the extent of making his will essentially contrary to his duty, and it must have proved successful to some extent, certainly." 1 Redfield on Wills, 523–4–5.

The rule as laid down by Greenleaf, is: "It must be an influence obtained by flattery, excessive importunity or threats, or in some other mode by which dominion is acquired over the will of the testator, destroying his free agency, and constraining him to do, against his free will, what he is unable to refuse." 2 Greenl. on Ev., sec. 688.

In Williams on Executors, the rule is laid down as follows: "The influence to vitiate a will must amount to force and coercion, destroying free agency; it must not be the influence of affection and attachment; it must not be the mere desire of gratifying the wishes of another, for that would be a very strong ground in support of a testamentary act; further, there must be proof that it was obtained by this coercion, by importunity which could not be resisted, that it was done merely for the sake of peace, so that the motive was tantamount to force and fear."   1 Williams on Executors, 37.

In *Green* v. *Green*, 9 Gratt., 333, the rule is laid down by Judge Allen, as follows: As to undue influence, the influence resulting from attachment, or the mere desire of gratifying the wishes of another, if the free agency of the party is not impaired, does not affect the validity of the act.

In *Parramoure* v. *Taylor*, 11 Gratt., 239, the court adopted the paragraph copied from Williams on Executors, 37, and

recognized it as the law of Virginia in relation to undue influence.

The instruction given by the court, in exception sixteen, is not well nor clearly expressed, but is substantially to the effect that, if the testatrix made a disposition of her estate, which she did not desire, and did not intend, and such disposition was so made by reason of the undue influence exerted upon her and operating at the time of making the same, it was such undue influence as would avoid the will, notwithstanding she was not controlled by any act of force, coercion or persuasion put forth at the time of signing the paper. And so understood, is not objectionable, for the freedom of the will is effectually overcome, and the act obviously more the offspring of another's will than of the testatrix.

There was no error in the instruction given in exception seventeen, taken as an independent or abstract proposition, but as applicable to the peculiar issue and circumstances of the case, it was calculated to mislead the jury and induce a response in the verdict to but half the issue submitted for inquiry, and was therefore objectionable.

There is no error in the instruction given in exception eighteen.

Exception nineteen is, that the verdict is not responsive to the issue. The issue was that a jury be impannelled, "to determine by their verdict whether any, and if any how much, of the papers in the bill mentioned, dated respectively, December 27th, 1861, and March 7th, 1866, be the will of the said Mary Forney, deceased." The verdict is, "We the jury find that the paper writing offered in evidence in this cause, purporting to be the will of Mary Forney, deceased, and dated December 27th, 1861, is not, nor is any part thereof, the last will of said Mary Forney, deceased." Nothing is said, in the verdict, in response to that part of the issue relative to the paper dated March 7th, 1866. There was a motion to set aside the verdict for that cause, which the court overruled. The verdict was clearly, therefore, obnoxious to the objection of not being responsive to the issue.

Exception twenty, is to the refusal to grant a new trial, on the ground that the verdict is contrary to the evidence. As the case must go before another jury, it is deemed proper to express no opinion on this point.

For the errors above stated, the decree of the circuit court must be reversed, with costs to the appellants, the verdict set aside, and a new trial awarded, and the cause remanded to the said circuit court for further proceedings to be had therein, in conformity with the views above indicated.

DECREE REVERSED.